[Cite as *Helfrich v. Hopson*, 2026-Ohio-2683.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
LICKING COUNTY, OHIO

| | |
|---|---|
| JAMES HELFRICH | Case No. 2025-CA-00097 |
| Plaintiff - Appellant | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Licking County Municipal Court, Case No. 25CVG00675 |
| LONNIE HOPSON | Judgment: Affirmed in part; Reversed in part; Judgment Entered |
| Defendant - Appellee | Date of Judgment Entry: July 13, 2026 |

BEFORE: Craig R. Baldwin, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: James Helfrich, Pro Se, Plaintiff-Appellant

OPINION

*Popham, J.,*

{¶1} Appellant/landlord James Helfrich appeals the judgment of the Licking County Municipal Court denying portions of his request for damages in this landlord-tenant action. Appellee is tenant Lonnie Hopson. For the reasons that follow, we affirm the judgment in part, reverse it in part, and enter final judgment in favor of Helfrich.

*Facts & Procedural History*

{¶2} On June 5, 2019, Helfrich entered into a lease agreement with Hopson for the rental of residential premises located at 159 South Township Road, Pataskala, Ohio.

**{¶3}** Helfrich commenced a forcible entry and detainer action against Hopson seeking restitution of the premises and monetary damages totaling $4,522.64. The trial court granted restitution, and a writ of restitution was issued and executed in April of 2025. The court subsequently scheduled a damages hearing for May 7, 2025, to address Helfrich's claims for unpaid rent and other damages.

**{¶4}** Before the hearing, on April 29, 2025, Helfrich filed a motion to supplement his complaint with an itemized list of damages. The trial court did not rule on the motion. Although the transcript reflects that the magistrate referred to the itemized list during the hearing, Helfrich never moved to admit the document into evidence.

**{¶5}** Helfrich appeared at the May 7, 2025, hearing and testified in support of his damages claims. He also presented the testimony of Randy Woolever and introduced the following exhibits: Exhibit A, the rental agreement and addendum; Exhibit B, an unpaid utility bill; and Exhibit C, undated photographs of the premises. Hopson did not appear for the hearing.

**{¶6}** On September 10, 2025, the magistrate issued her decision – finding that Hopson owed Helfrich $2,090 in unpaid rent, $300 in late fees under the rental agreement, and $170.13 in unpaid utilities. The magistrate further found that while Helfrich incurred expenses for cleaning the premises, hauling trash, and carpet replacement, and incurred expenses to repair the premises in excess of normal wear and tear, he failed to present receipts for these amounts. The magistrate also found that Hopson had paid a $995 security deposit.

**{¶7}** Based on these findings, the magistrate concluded that Helfrich established damages of $2,560.13 for unpaid rent, late fees, and utilities. After applying a $995 setoff for the security deposit, the magistrate awarded Helfrich $1,565.13.

{¶8}  On September 15, 2025, Helfrich filed objections to the magistrate's decision. He argued that the decision was contrary to the evidence and the law because his uncontroverted testimony and photographic evidence established additional property damages.

{¶9}  On December 19, 2025, the trial court overruled Helfrich's objections. The court concluded that Helfrich failed to prove his entitlement to damages beyond those awarded by the magistrate for unpaid rent, late fees, and utilities. The court entered judgment in Helfrich's favor in the amount of $1,565.13, together with court costs and post-judgment interest at the statutory rate of eight percent per annum from the date of judgment.

{¶10} Helfrich appeals the December 19, 2025, judgment of the Licking County Municipal Court, and assigns the following as error[1]:

{¶11} "I.   DID THE TRIAL COURT ERR WHEN IT UPHELD A MAGISTRATE'S DECISION THAT DENIED DAMAGES BECAUSE A RECEIPT WAS NOT PRODUCED?"

{¶12} "II.  IS THE TRIAL COURT'S DECISION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE ON THE RECORD?"

{¶13} "III.  IN A LANDLORD-TENANT DISPUTE OVER DAMAGES, IS THE LANDLORD REQUIRED TO REPAIR OR CLEAN THE CLAIMS OR DAMAGES (SIC) TO RECOVER HIS DAMAGES, I.E., WOULD THE LANDLORD BE ABLE TO COLLECT ON HIS DAMAGES ON THE DIMINISHED VALUE OF THE PROPERTY IF HE CHOOSES NOT TO EVEN CLEAN OR REPAIR IT."

---

[1] Assignments of error full capitalization in original.

**{¶14}** "IV. DID THE MAGISTRATE AND THEREFORE THE TRIAL COURT ERR WHEN IT CONDUCTED THE TRIAL AND REPEATEDLY TOLD HELFRICH TO BE QUIET WHEN HE TRIED TO PRESENT HIS TESTIMONY."

**{¶15}** "V. DID THE TRIAL COURT ERR WHEN IT FAILED TO TELL HELFRICH THAT THEY WILL USE ANY RULES THEY WANT TO UNTIL HE HUMBLES HIMSELF."

*Adding to the Record*

**{¶16}** Throughout his briefing to this Court, Helfrich discusses cases other than the one he has been permitted[2] to appeal, and includes facts and documents from other cases. "A reviewing court cannot add matter to the record before it that was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Hooks*, 92 Ohio St.3d 83, 83 (2001); *Doty v. Doty*, 1980 Ohio App. LEXIS 12935, *4 (4th Dist. Feb. 28, 1980). New material and factual assertions contained in any brief in this Court may not be considered. *State v. Helfrich*, 2019-Ohio-1785, ¶ 29 (5th Dist.). Therefore, we have disregarded facts and documents that are outside the record.

## I. & II.

**{¶17}** Helfrich's first and second assignments of error are related, and will be addressed together.

**{¶18}** As a preliminary matter, Helfrich repeatedly relies on what he refers to as "Exhibit A," an itemized list of damages. Although Helfrich attempted to supplement his complaint with this list, the trial court entered final judgment without ruling on the motion to supplement, thereby implicitly denying it. *Byrd v. Frush*, 2013-Ohio-3682, ¶ 40 (5th Dist.)

---

[2] Appellant has been declared a Vexatious Litigator pursuant to R.C. 2323.52.

("when a trial court enters judgment prior to ruling on a pending motion, that motion is considered to have been implicitly denied."). Moreover, Helfrich never offered the itemized list into evidence. Instead, Exhibit A admitted at trial was a copy of the rental agreement and addendum. Exhibits B and C likewise did not include the itemized list. Accordingly, Helfrich's itemized list of damages is not properly before this Court. *Hooks* at 83.

{¶19} In his first assignment of error, Helfrich argues the magistrate, and therefore the trial court, erred by indicating that receipts were required to prove damages. Helfrich is correct that he is not required to provide receipts in order to prove damages and that testimony alone may be sufficient to support a damage finding. That conclusion, however, does not resolve the issue before us. "An award of damages in a landlord-tenant dispute is governed by a manifest-weight-of-the-evidence review." *Hensel v. Childress*, 2019-Ohio-3934, ¶ 24 (1st Dist.). "The landlord bears the burden of submitting sufficient evidence to link the damages to the tenant." *Estie Inv. Co. v. Braff*, 2018-Ohio-4378, ¶ 25 (11th Dist.). Additionally, a landlord may not recover for repairs attributable to reasonable wear and tear. *Sotnyk v. Guillenno*, 2014-Ohio-3514, ¶5 (6th Dist.).

{¶20} The standard for manifest-weight review in civil cases is the same as in criminal cases. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17. "In determining whether a [judgment] is against the manifest weight of the evidence, the court of appeals functions as the 'thirteenth juror,' and, after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be overturned and a new trial ordered." *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶21}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *State v. Butler*, 2024-Ohio-4651, ¶ 75 (5th Dist.). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

**{¶22}** Helfrich contends the trial court's failure to award damages for the following items was against the manifest weight of the evidence: (1) carpet cleaning ($350); (2) wall repair, painting, and cleanup ($900); (3) oven and refrigerator cleanup and refrigerator handle replacement ($240); (4) carpet and pad replacement ($650); (5) hauling trash, furniture, and miscellaneous items ($200); (6) yard cleanup ($100); (7) driveway damage from oil ($150); (8) cleaning of floors ($50); (9) bathroom cleaning ($100); (10) screen repair ($150); and (11) garage door lock and mounting space ($150).

*Items (3), (5), (6), and (10)*

**{¶23}** We agree with Helfrich that, as to items (3), (5), (6), and (10), the record contains competent and credible evidence (i.e., specific testimony) supporting the claimed amounts.

**{¶24}** Helfrich testified that he paid his daughter $40 for refrigerator cleaning and that he paid $75 to replace a broken refrigerator handle. He further testified that he paid his daughter and Woolever $125 to clean the oven/stove. Helfrich introduced photographs depicting the condition of the appliance and described how this damage was beyond reasonable wear and tear. The magistrate indicated during the hearing that she intended to award Helfrich the cost of oven cleaning; however, she did not do so in her magistrate's decision.

{¶25} With respect to item (5), Helfrich testified that he paid Woolever $200 to haul away trash, furniture, and miscellaneous items, and confirmed that Woolever billed hours for that specific unit. That magistrate asked, "[O]kay, attributable to this unit and this function," and Helfrich responded, "yes ma'am." Woolever described the items removed, including shingles, metal, a basketball hoop, a couch, and a television, and testified that their removal was beyond normal wear and tear.

{¶26} As to item (6), Helfrich testified that he paid Woolever $100 for yard cleanup after the tenant drove through the yard following Helfrich's delivery of the notice to vacate. Woolever testified that the yard required reseeding and re-leveling. Helfrich testified the damage was beyond reasonable wear and tear.

{¶27} Regarding item (10), Helfrich testified that damaged window screens required replacement, and that he personally went to the hardware store and purchased replacements for $150.

{¶28} Accordingly, the record contains specific testimony identifying the work performed, the specific amount of damages incurred, and evidence that the damages resulted from conditions exceeding ordinary wear and tear. The trial court's failure to award damages for these items is against the manifest weight of the evidence. We therefore conclude that Helfrich is entitled to an additional $645 in damages for items (3), (5), (6), and (10).

*Remainder of Items on the List*

{¶29} For the remainder of the claimed damages, we reach a different conclusion.

{¶30} Helfrich relies extensively on photographs taken several days after Hopson moved out. While the photographs may depict damages beyond ordinary wear and tear, they

do not establish the monetary value of repairs or replacements. Without competent evidence of cost to repair or replace, the photographs alone cannot support a specific damages award.

{¶31} Helfrich testified that he paid Woolever to repaint the walls, repair the walls, and clean the bathroom and floors, and that Woolever would testify as to how many hours it took him to complete each of these tasks. Woolever testified that he works on various properties and units for Helfrich, and charges him $25 per hour. When asked how long it took him to repaint and repair the walls, Woolever stated, "I don't recall the hour breakdown on those." When the magistrate asked him for an estimate on how long he spent repainting the walls, repairing the walls, and cleaning the floors and bathroom, Woolever was unable to provide any reliable estimate of the time spent on individual tasks, stating that he did not recall the breakdown and had multiple days at the property without itemization of hours.

{¶32} During Helfrich's examination of Woolever, Woolever was able to describe each of the tasks he performed but was again unable to testify to how long he spent at the property, or how long the repairing of the walls, repainting of the walls, and cleaning of the floors and bathroom took. Neither Helfrich nor Woolever provided testimony regarding the cost of driveway repair due to Hopson's alleged "misuse of oil." Because neither witness identified the number of hours devoted to or the specific cost of each repair or cleaning task, the testimony lacked sufficient detail to support an award of damages. *Estie Inv. Co. v. Braff*, 2018-Ohio-4378 (11th Dist.); *Calanni v. Stowers*, 2018-Ohio-4025 (8th Dist.) (testimony and invoice lacked sufficient detail such as hourly rate and number of hours worked).

{¶33} As to carpet cleaning, Helfrich admitted that he had not yet incurred the expense, had no estimate, and did not identify who would perform the work. When the magistrate asked Helfrich if he had an estimate, Helfrich testified he "didn't have anything

yet," and that he was having the carpets cleaned in 12 of his units the next morning. Similarly, for the garage door lock and mounting repair, he acknowledged the work had not been performed and no estimate existed. The testimony lacked sufficient detail to support an award of damage. *Bailey v. Fairchild*, 2010-Ohio-5750 (2nd Dist.).

{¶34} Finally, regarding carpet replacement, a landlord may recover only the difference between the value of the carpeting before the tenant's breach and the value of the carpeting after the breach. *Warner v. Zuccola*, 1987 Ohio App. LEXIS 10225 (8th Dist.). Here, although Helfrich testified the carpet was new when installed and had been used by Hopson for five to six years, Helfrich provided no evidence of its original value. Without such evidence, any damages award would be speculative. *Id.*

{¶35} Accordingly, the trial court did not commit error in declining to award damages for the remaining items. Helfrich's first and second assignments of error are overruled in part and sustained in part.

III.

{¶36} In his third assignment of error, Helfrich asks this Court to determine whether a landlord may recover damages for the diminished value of the property if the landlord elects not to clean or repair the premises.

{¶37} As framed, this issue does not present a justiciable controversy in this case. Throughout the proceedings below and in his appellate briefing, Helfrich has maintained that he did, in fact, clean and repair the premises after Hopson vacated the property. Accordingly, his argument asks this Court to resolve a hypothetical question concerning a scenario after a speculative event.

**{¶38}** It is well-established that courts of appeals decide actual controversies between parties and do not issue advisory opinions on abstract or speculative questions. *Manogg v. Randolph*, 2019-Ohio-693, ¶ 13 (5th Dist.). Because this assignment of error presents only a request for an advisory ruling that would not affect the outcome of this appeal, we decline to address it.

IV.

**{¶39}** In his fourth assignment of error, Helfrich contends the magistrate erred by repeatedly instructing him to be quiet during the hearing while he attempted to present testimony. Upon our review of the transcript, we disagree with Helfrich's characterization of what occurred during the hearing.

**{¶40}** At the outset of the hearing, the magistrate advised Helfrich that she would first ask him a series of questions and that, upon completion, he would be given an opportunity to make any additional statements in support of his claim for damages. Despite this directive, Helfrich interjected with testimony outside of the magistrate's structured order of questioning. The magistrate redirected him and explained the order in which the testimony would be taken.

**{¶41}** After completing her initial questioning, the magistrate asked whether Helfrich had anything further to add. He responded by repeating testimony he had already provided. The magistrate advised him that he was being repetitive and again asked whether he had additional information to present. Helfrich responded, "no, ma'am."

**{¶42}** The magistrate then questioned Woolever. At the conclusion of her questioning, she permitted Woolever to present any additional information he wished to provide. She also permitted Helfrich to question Woolever. After asking Woolever a few questions, Helfrich again repeated prior testimony and made disparaging remarks concerning

a judge of the Licking County Municipal Court. The magistrate again instructed him to avoid repetition and to confine his statements to matters relevant to the damages at issue.

{¶43} A review of the transcript demonstrates that the magistrate's comments and interruptions were directed toward managing the orderly presentation of evidence and focusing the testimony on relevant issues. *Simpson v. Simpson*, 2025-Ohio-5743, ¶ 9 (10th Dist.); *J.S. v. L.S.*, 2020-Ohio-1135, ¶ 18 (10th Dist.). Further, even after the magistrate interrupted Helfrich, the record shows that she consistently afforded Helfrich an opportunity to speak and present his case. *State v. Noble*, 2026-Ohio-1921, ¶ 26 (11th Dist.). Helfrich's fourth assignment of error is overruled.

V.

{¶44} In his final assignment of error, Helfrich asserts that the trial court erred by "fail[ing] to tell [him]" that it would "use any rules they want to until Helfrich humbles himself." We have reviewed the record in this case, and we find no merit in Helfrich's argument that the trial judge "used any rules [she] wanted," or was biased against him.

{¶45} "Judicial bias is demonstrated by 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *State v. Loudermilk*, 2017-Ohio-7378, ¶ 21 (1st Dist.), quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469 (1956), paragraph four of the syllabus.

{¶46} The record reflects no indication of bias, hostility, or favoritism by either the magistrate or the trial judge. To the contrary, the proceedings demonstrate that the magistrate managed the hearing in an orderly manner and provided Helfrich with the opportunity to

present evidence. Moreover, Helfrich does not identify any specific rule allegedly misapplied or improperly invoked by the trial court, and our review of the record reveals no improper use of any rules. Accordingly, Helfrich's fifth assignment of error is overruled.

{¶47} Based on the foregoing, Helfrich's third, fourth, and fifth assignments of error are overruled. Helfrich's first and second assignments of error are overruled in part and sustained in part. The judgment of the Licking County Municipal Court is affirmed in part and reversed in part. Pursuant to Appellate Rule 12(B), we hereby enter final judgment in favor of Helfrich in the amount of $2,210.13, plus interest at the legal rate.

{¶48} Costs to be split equally between the parties.


By: Popham, J.and

Baldwin, P.J. concur;

Gormley, J., concurs in part,

Dissents in part

*Gormley, J., concurring in part and dissenting in part*

{¶49}   I agree with the court's decision denying appellant Helfrich's third, fourth, and fifth assignments of error.  I disagree in part, though, with the court's handling of the first and second assignments of error.  On those, I see no basis for us to conclude that the trial court lost its way and created a manifest miscarriage of justice when that court declined to award damages to Helfrich for what this court today describes as "items (3), (5), (6), and (10)," and I therefore dissent from paragraphs 1, 23 through 28, 35, 47, and 48 of today's opinion and judgment.

{¶50}   In the trial-court judgment that we are reviewing in this case, the trial judge found that Helfrich had — in that judge's words — "failed to prove" damages beyond the $1,565.13 amount recommended by the magistrate.  By concluding today that such a finding was against the manifest weight of the evidence, this court, in my view, has failed to give proper weight to what the Supreme Court has labeled as "the presumption in favor of the finder of fact."  *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21 (explaining the manifest-weight standard and reiterating the Supreme Court's longstanding view that "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts").

{¶51}   In finding that the trial court clearly lost its way when that court concluded that Helfrich had not met his burden of proving some of the damages that he sought, this court evidently believes that the trial court was obligated to accept Helfrich's testimony as true and was further obligated to find that he had offered sufficient evidence to meet his burden of proof.  I respectfully suggest that our court is overstepping our proper role by coming to such a conclusion.  See *A.V. v. McNichols*, 2019-Ohio-2180, ¶ 15 (4th Dist.) ("When an appellate

court reviews a trial court's judgment, it must generally defer to the fact-finder's weight of the evidence and credibility determinations"); *7471 Tyler Blvd., LLC v. Titan Asphalt and Paving, Inc.*, 2020-Ohio-5304, ¶ 216 (11th Dist.) ("A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court") (quotations and citation omitted); *Brentlinger Ent. v. Curran*, 141 Ohio App.3d 640, 648 (10th Dist. 2001) ("a judgment will not be reversed as against the manifest weight of the evidence merely because the evidence sustaining it is open to suspicion or does not impress the reviewing court, or the court is not satisfied that such verdict is right, or would have rendered a different verdict or decided differently if it had heard the case in the first instance") (quotations and citation omitted).

{¶52} To be sure, the trial court's judgment does not include words such as "I do not find Mr. Helfrich's testimony to be credible on [items (3), (5), (6), and (10)]," but when is the finder of fact ever required to say such a thing when that factfinder concludes that the party bearing the burden of proof has — in the words that the trial court did use in this case — "failed to prove" its claim ? After all, when a jury in a criminal case finds a defendant not guilty, we do not insist that the jury tell us whether the State came up short because the jurors doubted the credibility of the State's witnesses or instead because the jurors simply wanted more — or more persuasive — evidence than the credible evidence that was presented to them. In either case, the outcome is the same: the party with the burden of proof has not persuaded the factfinder that the case has been proven.

{¶53} That is what happened in this case in connection with so-called items (3), (5), (6), and (10). The factfinder simply was not persuaded, whether by the reliability or the

amount or the strength of the evidence that the trial court saw and heard. Absent a manifest miscarriage of justice, we ought not disturb that trial-court verdict.

{¶54} I readily acknowledge that the trial-court magistrate before whom the evidence in this case was presented wrote, in her decision, that Helfrich "failed to present any receipts" for the items that the court today labels as items (3), (5), (6), and (10). Nothing in the magistrate's decision, though, leads me to conclude that the magistrate, by using those words, meant to suggest that receipts must necessarily be presented in order for a landlord to prove his or her claim for damages allegedly caused by a tenant. Rather, I read the magistrate's decision as simply telling us that (1) Helfrich testified about having incurred certain repair-related expenses at the property in question and (2) no receipts were presented about those expenses. Those are facts, and the record before us supports those facts.

{¶55} From all the facts presented in the trial court, the magistrate — and then ultimately the trial judge — found that Helfrich had met his burden of proof on some of his claims and that he had failed to meet his burden on others. Receipts, had they been presented, may or may not have been helpful to him, but neither the magistrate nor the trial judge decreed that the case turned solely on the presence or absence of receipts. More — or more persuasive — witnesses may also have been helpful to him, but just as Helfrich was not required to explain why he chose to present the witnesses and the exhibits that he offered, neither the magistrate nor the trial judge was required to explain precisely how and why Helfrich came up short in proving some of his damages claims.

{¶56} All the trial court had to do was make a judgment about those claims, taking into account all of the things that make evidence in any case persuasive: its relevance,

reliability, and context. The trial court fulfilled that duty and found, as the trial court's order says, that Helfrich "failed to prove" some of his claims.

{¶57} Our role today is different from the one assigned to the trial court, and we ought to be giving much greater deference to the conclusions that the trial court reached. *See Horstman v. Fanning*, 2019-Ohio-2483, ¶ 13 (3d Dist.) (discussing the manifest-weight standard and explain that "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court") (quotations and citation omitted); *Amerifirst Sav. Bank of Xenia v. Krug*, 136 Ohio App.3d 468, 486 (2d Dist. 1999) ("when addressing a weight of the evidence challenge, we . . . accord substantial deference to a fact finder's decision as to which testimony to credit, and to what extent to do so"); *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984) ("A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court").

{¶58} I fear that this court, by finding that the trial court's conclusions on so-called items (3), (5), (6), and (10) were against the manifest weight of the evidence, has created a new standard that we will regret in the years to come. Though we are not factfinders, today's decision will encourage those dissatisfied with factfinding in the trial courts to retry the cases here, for we are today sending the message that we are all too happy to second-guess trial courts' judgments about the persuasiveness of the evidence presented in those courts.

{¶59} After all, if this court is so troubled today by the trial court's failure to award an additional — according to paragraph 28 above — $645 to Helfrich that we must describe that failure as a miscarriage of justice, what trial-court verdict, whether civil or criminal, is

safe here from the new and aggressive (dare I say activist?) approach to manifest-weight review that the court embraces today ?  While heretofore the overturning of a trial-court verdict on manifest-weight grounds was confined solely to those "extraordinary circumstances" where the evidence presented at trial "weighs heavily in favor of the appellant" — as the court in *Duke Energy Ohio, Inc. v Hamilton*, 2021-Ohio-3778, ¶ 33 (12th Dist.) said — today it is our court that is behaving in an extraordinary way in its handling of what is a quintessentially ordinary verdict.  I dissent from this troubling legal frolic on which we are evidently now embarking.

**{¶60}**  For the reasons explained above, I join in the court's opinion, aside from paragraphs 1, 23-28, 35, 47, and 48.  I concur in those portions of the court's judgment that affirm the trial court's judgment, but I dissent from any portion of today's judgment overturning the judgment of the trial court.  I would affirm the trial court's judgment in all respects.